The next case on the call of the docket is agenda number 10, case number 132453. Tiedemann v. Tiedemann. Is the attorney for the appellant ready to proceed? Yes, your honor. Please proceed, counsel. Thank you. May it please the court. Counsel. My name is Mike Ruzzatti. I'm from Weber and Theis in Champaign. And myself, along with David Theis and Hayden Earl, represent Debra Tiedemann as the trustee of her late husband's inter vivos trust. We thank the court for taking this case because it presents a really important question to the trust in the state's portion of the Illinois Bar. As well as every Illinois resident that has executed an inter vivos trust, relying on the distinction in Illinois law between property that is placed in that trust and property that remains part of their probate estate. This matter presents a straightforward question of law. Can section 2019 of the Illinois Probate Act, a statute that by its plain language restricts the payment of certain debt from assets in a decedent's estate, be extended beyond that plain language into the province of the trust code to also restrict the payment of debt from assets in an inter vivos trust? Now, important to this question is the fact that in Illinois, the law clearly distinguishes between assets in a trust and in a probate estate. The legislature has set up a separate statutory framework for each type of asset. And for good reason. Trusts are governed by the trust code. Estates are governed by the Probate Act. These separate frameworks allow Illinois residents flexibility in their estate plans. Are there examples in Illinois law of any provision of the Probate Act being held to apply to inter vivos trust? So, the Probate Act and the Trust Act are generally separate. There can be some crossover, but where that happens, the legislature makes it clear that that Probate Act provision would be applying to a trust or vice versa. In this case, we're dealing with a provision that does not mention the administration of trusts at all. And so, these separate frameworks are set up so that Illinois residents can take advantage of the benefits that trusts have, for instance. So, trusts, unlike estates, can be active during a settler's life. And they can remain active long after a settler's life. Trusts allow more control for a settler to deal with their assets. They allow them to ensure that certain assets do not become part of a probate estate. They allow them to maintain privacy of their assets even after their death. Is it your contention that Article 10 of the Inter Vivos Trust obligates that payment for a debt outside of the trust be paid outside of probate? Yes, Your Honor. So, Article 10 of the trust, and really at its core, this is a trust administration matter. And so, the trust at issue was created by the settler in 2014. And he named himself as trustee and his wife as successor trustee. During the settler's life, he placed three farm properties into that trust. And those properties remain the entire universe of trust assets to this date. When he passed away in 2023, Article 10 of the trust provided clear direction to the trustee. It said, upon the death of the settler, the trustee is to pay from the trust estate all of my just debts. That's a very clear directive of what the trustee is meant to do. It is unambiguous, and the trustee is required to file that claim. Yes, and unlike what case law regarding, you know, 2019 of the Probate Act, where, you know, we know that that language wouldn't be sufficient to acquire payment of real estate debt under the Probate Act. Where you're saying under the Trust Act, it is, and it's sufficient for all debts, not just debts that are, you know, related to trust assets. Yes, and I think what Your Honor is getting at is there is some case law that talks about a general provision in a will not being sufficient to kind of get around the requirements of 2019. Counsel, I was going to say, this piece of property at issue was transferred subject to a joint tenancy, correct? So it just goes directly and automatically, really not pursuant to the trust administration or the probate administration. That is correct. So the piece of property does that. However, what we're talking about in this case is the promissory note. So the settler obtained a promissory note in 2022. That is the debt that we are talking about. That's the settler's debt that we are saying needs to be paid. And so he used the proceeds of that promissory note to purchase farm property, which was in joint tenancy with right of survivorship with his wife. It is the debt related to the promissory note that we are saying must be paid by the clear language of the trust. And the trust requires all of the settler's just debts to be paid. Counsel, you said you asserted that the other side didn't raise any arguments relating to interpretation of Article 10 in their arguments below. Is that correct? That is correct. So the respondents did not want the trustee to pay this debt. And that led our client to file a petition for aid and direction. I understand that. But did you assert that they did not argue anything regarding Article 10 and rather just raising it here for the first time? Is that your contention? Yes. So in the circuit court, they only advanced one argument. And that sole argument was that Section 2019 of the Probate Act restricted the payment of the promissory note with assets from the trust. They did not argue that Article 10 was ambiguous or that it shouldn't be followed. And importantly, there were two debts known to the settler at the time she filed her petition. One was the promissory note. The other was a debt on a tractor. And they never opposed the payment of the debt on the tractor. If they thought Article 10 was ambiguous, then the same arguments they advance now here for the first time would have applied to that tractor debt as well. But they never made those arguments in the circuit court. They only argued that Section 2019 of the Probate Act restricted the trustee's ability to pay the promissory note with assets from the trust estate. And Section 2019 was enacted by the legislature nearly 60 years ago. It is a statute in the Probate Act that deals specifically with a probate issue, the common law doctrine of exoneration. This doctrine had provided that without instruction to the contrary in a decedent's will, all of the decedent's debts would have been paid out of their estate. The legislature enacted 2019 to operate in derogation of this rule. They believed that debts related to real estate that passed on at the time of the settler's death should not be unencumbered by the decedent's estate. That the decedent's estate should not be used to pay those debts. And that was the purpose of enacting Section 2019. And as this court knows, statutes like Section 2019 that operate in derogation of the common law must be construed strictly. And of course, as this court has said many times, the cardinal rule of statutory interpretation is to ascertain and give the intent of the legislature. And the most reliable indicator of that intent is the language of the statute. And so when you look at Section 2019, what it says is that no matter how an individual comes to inherit property upon someone's death, whether they inherit through the terms of a will, through the terms of a trust, through the terms of the right of survivorship, that no matter how they come to inherit that, if there is an encumbrance on that property, they cannot have that encumbrance paid from, quoting from the statute, the real or personal estate of the decedent. By its clear terms, it is only restricting the payment of debt from a single source, the decedent's estate. And this is true not just from the plain language of the statute, but in the nearly 60 years that this statute has been in existence, every appellate court that has analyzed the statute has only applied it to the payment of debt from assets in a decedent's estate. None of these four pieces of property, correct? None of them pass through the estate. So there are three pieces of property in the trust. Those were not subject to the promissory note. I'm sorry. There were three properties in the trust prior to the promissory note. The settler used the promissory note to purchase a different property. And they aren't part of the probate estate. None of those are part of the probate estate. And the property purchased in 2022, not part of the probate estate. That is correct. So none of this is part of the probate estate. None of this is part of the probate estate. And Section 2019 simply doesn't apply here. But it's plain language by the 60 years of precedent. And because of this distinction in Illinois law between assets in a decedent's estate and assets that they choose to place in an intravivalous trust, for all of those reasons that we talked about, the benefits of having that, there would be far-reaching consequences to every intravivalous trust in this state if Section 2019 of the Probate Act, which restricts the payment of debt from the, quote, real or personal estate of the decedent, were to be extended to also apply to trusts. To do that, this Court would have to find that language is ambiguous. And then it would have to conclude that the legislature meant that the real or personal estate of the decedent included assets in an intravivalous trust. But that goes against this Court's own precedent, which holds that assets in an intravivalous trust are clearly distinct from an estate. And it would just do damage to all of the intravivalous trusts that exist out there. It would place the Probate Act in a position superior to the trust code, something that the legislature never intended. It would undermine the trust code, which the legislature recently reenacted just a few years ago. And they did not include a restriction in the updated trust code which would restrict the payment of debt from assets in a trust to unencumbered property. There is not that restriction in the trust code, which the legislature just updated. If the legislature wanted Section 2019 to apply to the payment of debt from assets in an intravivalous trust, they either would have said so expressly in the statute or they would have taken the opportunity and put it in the trust code. Mr. Brussardi, what about the line of cases that hold that general language about payment of debts is insufficient to show an intent to pay a promissory note debt using trust assets? Whether they arise in the probate context or any other context, it's the same language that the courts are interpreting. So why should it be interpreted one way under the trust agreement and a different way under the statute? Sure. It is because those cases, when you look at them, the reason they're ruling that way is because Section 2019 applies. And when Section 2019 applies, it says unless otherwise expressly said, these debts cannot be paid from the estate. So they are requiring more than general language because Section 2019 requires express language when debt is to be paid from an estate. But there is no requirement in 2019 or in the trust code that requires express language in a trust. And so those cases simply do not apply because they only apply when the requirements of Section 2019 are present. So, again, as it matters, this is a straightforward trust administration question. Article 10 of the trust provides clear direction to the trustee to pay all of the settler's just debts. That language is clear and unambiguous. The circuit court concluded it was clear language. The appellate court said it was. That wasn't a question before them, but they both put in their orders that this clearly directs the settler to do this. Mr. Bersotti, what about the language that follows, the just debts language, which is debts related to the specific example, LMS, if you know, fees from transfer of property? Doesn't that sort of cabin the scope of the general provision, just debts? I don't think it does. And this court has spoken to this question in People v. Perry in 2007. And it said that when there is a general language that is then followed by a list of examples, those examples in no way affect the general language. If you use the word including, the court was kind of saying this is highlighting certain things we don't want to be forgotten. But the court was very clear in People v. Perry that when there is a list followed by the word including, that that is just illustrating types of debts, but is in no way limiting. They left out a big one. What's that? They left out a big one, the payment of the debt on the note. That's true. And the promissory note was not in existence at the time that the trust was executed. And there is some argument that maybe the settler wouldn't have wanted trust assets used to pay the promissory note. I think, first of all, we have to follow the clear language of the trust. But I also want to remind the court that the settler by his actions clearly showed an intent to have trust assets used to pay the promissory note should it go into fault. Because at the same time the promissory note was executed, a mortgage was executed to secure it. And the trustee, well, the settler acting as the trustee at the time, signed that mortgage putting all three trust properties on the line should the promissory note go into fault. And so I think, first of all, in order to have the promissory note paid, we just have to follow the unambiguous language of Article 10. But to the extent there is any concern that this was not the settler's intent, when he had the chance, when he executed the promissory note, he specifically put the entire universe of trust assets on the line should the promissory note go into fault. And so based on the trust's plain language, the clear language of Article 10, based on the fact that Section 2019 of the Probate Act simply cannot apply to this trust administration matter, we ask that the court reverse the trial court's, the circuit, the appellate court's opinion. We ask that the court find that Section 2019 of the Probate Act simply does not apply to the payment of debt from assets in inter vivo's trust. And we ask that the court look at the trust and say that the clear and unambiguous language in Article 10 clearly directs the trustee to pay all of the settler's just debts, and that one of those debts is unquestionably, as the circuit court put it, the promissory note. Thank you, counsel. Mr. Jomer, please proceed with your argument. Good morning, and may it please the court. Good morning. Counsel. My name is Andrew Jomer, and myself, along with co-counsel David Roth, represent Respondent, Appellees Brent and Kevin Tiedemann. Your Honors, I would agree this is a simple trust administration case, and this matter comes before this court today upon de novo review to determine whether the petitioner appellant must receive the settler's interest in the ranch of the property, subject to its encumbrances, and without a discharge from the trust of Edward E. Tiedemann, dated January 30, 2014. Now, Your Honor, the answer to this question is a simple yes, and for two reasons that are expounded upon in our brief and I'll discuss here today. The first is that simply Article 10 and the remainder of the trust does not direct petitioner appellant to use trust assets to pay off promissory note. This is true when you look specifically at Article 10, and when you look at the remainder of this trust instrument, there is clearly no direction from Edward E. Tiedemann for trust assets to be used to pay off promissory note. Counsel, I'll ask you the same question. Did you argue Article 10 to the trial court? This, the argument specifically concerning Article 10, no, Your Honor. It was that there was a, the application of Section 20-19 prohibited trust assets from being used to pay off the promissory note. But I don't believe that there has been a waiver of this argument for two reasons. The first being, Your Honor, is that the Section 20-19 analysis is stating that. When a court applies Section 20-19, what it is looking to is seeing is there any manifestation of intent by the drafter of the instrument. But to the extent that Article 10 is a very important factor in the fabric of the arguments, shouldn't you have argued that in the trial court? Your Honor, we were not representing our clients in the trial court level. I never like that answer when someone says I wasn't doing it in the trial court level. But, you know, so this, consider the substance of my question. To the extent that Section 10 of the trust is an important factor in your argument, shouldn't it have been argued in the trial court so that the trial court would have had an opportunity to address it and respond to it? And I believe that they were, Your Honor, while not directly saying specifically Article 10 itself does not direct trustee to use trust assets. By saying Section 20-19A is applicable, that is what they're saying, that there is no regression. That's not what I asked you, Counselor. I just asked, it's important because you're both arguing it here. And all I'm saying is shouldn't the trial court have had an opportunity to hear or have the benefit of your arguments with respect to that section of the trust? It's so important. I would agree to your point, Your Honor, that this, that argument could and should have been made. In addition to that, while I'm stating that there has been a waiver of this argument by us arguing at the trial court level as well as the appellate court level. Why not? Why is, your opponent says it's waived or forfeited. Why not? Tell me why it's not. Because the Section 20-19A analysis is the same question as whether is there any intent within the instrument for the trust assets to be used to pay off the promissory note. It's saying, is there any intention by the decedent here? And that's exactly what the argument is that Article 10, in addition to the remainder of the trust agreement, Your Honor, does not direct the trustee in this case to use trust assets to pay off the promissory note. In addition, Your Honor, the second reason why it hasn't been waived, this court has recognized in In Re Veronica in 2010 that the waiver limitation is upon the parties and not this court. And specifically— But does that mean that the parties don't have to raise the arguments and that the court should do it for them or consider it anyway? Is that what that means? No, that is not what that means, Your Honor. But it does mean that when the court recognized that there is a sound body of precedent to uphold, that it should relax that waiver requirement. And that's what exactly happened in Veronica, and that's what we believe should be done today. Because when we're asking this court to look at the trust, Your Honor, we're saying that there's a sound body of precedence in Illinois law to effectuate the intent of the decedent, to effectuate the settler's intent when drafting a trust instrument. And if we look at the trust—I mean, if we look at the actions of the settler, so he has this property that's placed in this trust, three parcels. Then in 22, when they purchase the fourth piece of property, they execute mortgages against the three parcels that are in that trust. And it's clear from Article 4, subsection 2, that it seems that, you know, the settler seems to anticipate placing property number 4 into the trust. Because he talks about how, in the event that that property is used as marital property and becomes part of the trust estate, the wife can use this rent-free. She pays the cost of living there. And then at her death or failure to pay these costs, the property goes to the son. So everything would go. Because there is no, you know, it seems like the only thing he maybe failed to do is put that property into the trust. But it was never—it doesn't seem that any of this was ever drafted with the intent that it was ever going to pass through the probate estate. It was never intended for that purpose. Do you agree with that? I would agree with that. If your question is—I'm sorry, Justice. I believe you're asking about the ranch-settler property becoming trust property. No, that was never the intention of Everett Tiedemann. The title of the property was titled as joint tenant with right of survivorship. So Ed knew that upon his death, the title of that property would vest as a matter of law automatically to Debra Tiedemann. But he also knew that under Section 20-19, that that statute directs that the incumbents follow the transfer of property, that it mandates that. And Illinois law assumes that when a drafter is constructing a trust agreement, that he's aware of all the requirements that put one another on the law in addition to a will. But that property wasn't part of the trust estate either, or that probate estate either. Correct. So why would it matter that he knew that the estate, you know, there would be no exoneration? Because that property wasn't going to be subject to the probate estate either. Right. So he knew that the title would automatically vest with Debra Tiedemann, and that the incumbents would follow it upon investing automatically with her. And with respect to the ranch- But he had executed these mortgages against property that also wasn't part of the probate estate, property that was in this trust. So did he just think that that was going to – those were going to disappear? I believe so, Your Honor. I believe that he knew that under Section 20-19, that the incumbents to the ranch or the property would follow, and that Debra Tiedemann individually, not the trust, would be responsible for payment of the incumbents that followed. Do you think the bank cares what he thought? I mean, if they have the right to foreclose their lien against the property, I mean, does it matter? But he wanted – apparently, your argument is he wanted her to have all that debt. But that's not how he – that's not how the property was financed, right? There was a mortgage that's attached to it, but in addition to that, Debra Tiedemann – Debra executed that mortgage as well. When speaking to – looking at the remainder of the trust, I think the intent of Edward Tiedemann is clear. When you look to not just Article 10, Your Honor, but when you look to Article 3 and Article 4, Article 3, Your Honor, is the only provision in this trust that specifically speaks to the payment of a mortgage. What that is speaking to is that in the event that Edward Tiedemann was still alive and he was serving as trustee of the estate that – or no longer in capacity, that he and – or he and Debra would live at this marital residence and that she would not be responsible for the mortgage payments, that the trust estate would be responsible for the mortgage payments. This is the only article in the trust that speaks to payment of a mortgage from the promissory note. Article 4.1 speaks to having – Debra having a life estate in the marital residence when that has passed, but specifically states that in Article 4.2 that if there's marital property that does not become trust property, is not in the trust, that Debra is responsible for the monthly mortgage payments. This is manifestation of intent by Edward Tiedemann for Debra Tiedemann to be responsible for mortgage payments to a property that she is entitled to as another rancher of the property. And when you look to Article 10, speaking to the petitioner's arguments, Article 10 clearly does not direct Debra Tiedemann to use trust assets to pay off the promissory note. This is clear on our plain ordinary reading analysis. As Justice Taylor raised, they left out a large promissory note. At the time of Ed's death, the note had a debt of over $865,000. One would think that if Ed had intended for the trust estate to be responsible for this promissory note, that he would have manifested that intent somewhere within this trust. But he did not specifically do so. If we look at Article 10, where it talks about trustees shall pay from the trust estate directly or through my personal representative, all of my just debts, and then it goes all expenses of administration of property wherever situated, passing under my will, or this instrument, or otherwise. What do you think all expenses of administration of property, whatever, what do you think that means? That would be relating to, it would be relating to a promissory note that exceeds $865,000, Your Honor. Why not? Because that would, he would have used specific language to state that, like he did in Article 4.2 when speaking to a mortgage payment. I think he would have used language that would specifically reference a mortgage or a promissory note. Rather, Your Honor, I believe when you apply the doctrine of the student generis, these are items that are somewhat, or these are items that are general estate-winding. Well, he's got a, he's got another provision for that. Because he talks about all expenses of administration of property wherever situated, things that would be in the probate estate or in my will, this instrument, the trust, or otherwise, which would appear to include or at least not exclude things that pass by joint tenancy, and then says, and all estate, inheritance, transfer, succession taxes, which become due by reason of my death, you know, other than the tax on generation skipping transfer. So it seems that that provision has some separate meaning other than, you know, paying all the, you know, incidentals regarding what happens and who he owes money to to administer his estate and the trust. So why is it that you feel, given that, that this can't, isn't part of that? Because this is just general boilerplate language, Your Honor. This is not, if Ed Tiedemann intended for the trust estate to be responsible for the promissory note, he knew how to use specific language to encompass that. As I stated in Article 4.2, he specifically referenced to using trust assets to pay off a promissory note. As the appellate court correctly found that Ed Tiedemann had drafted a strategic estate plan, he knew how to use the language to use trust assets to pay off a promissory note, and he specifically chose not to do so in Article 10. This is really just general boilerplate language, and it's the only language within the trust that trustee can point to, and that she's been relying upon since the inception of this case. She points to nowhere else within the trust that seems to manifest this intent for her to be able to use trust assets to pay off his promissory notes. What, if any, significance is the fact that this property transferred pursuant to operation of law by joint tenancy? That's why, that's how Section 20-19 comes into play. Right, but so in regard to the payment of debts associated with that property, I'm trying to build a bridge here between the words of the trust and the transfer of this property by joint tenancy. So does the fact that it transfers by joint tenancy affect the language of the trust in terms of just debts? I don't think I'm making myself clear. I'm understanding your question of whether that means that it falls under Article 10. Is that your question, Justice? Well, I'm asking when we're looking at just debts and determining what is included in just debts, the fact that this, you know, what significance or relevance is the fact that it transferred by joint tenancy? How is that debt different than other debts of this decedent? It's different from other debts because there would be no, as just so Brian raised in her question, there would be no cost related to this transfer. There are no transfer taxes. There are no fees that need to be reported. It automatically goes. This property automatically goes to Debra Tietum as operation of law. So it couldn't fall within that language that Justin O'Brien was mentioning when looking to this Article 10, this just debts language. I think it's important to look at the language that Ed used. He said, pay my just debts, comma, including, and then just using general phrasing, certain transfer taxes, properties, administration expenses, and then it does not say specifically a promissory note. So, counsel, are you saying it was a just debt before he died but after he died and it's now transfers by joint tenancies, it's no longer his debt, it's now her debt? It was his debt at the time of his death. The promissory note was his debt. What I'm saying, Justice Cunningham, is not fall within the term just debts as used within Article 10 by Edward Tietum. Why not? And here we are arguing Article 10 again. It wasn't argued in the trial court. What makes it a just debt on one side of his death but not on the other side of his death? I mean, it's either it's a just debt or it's not a just debt. I'm not sure I'm understanding your argument as to what distinguishes it because the debt is in joint tenancy with the successor trustee. So to answer your first question, Justice Cunningham, I believe that the distinction is because there's no dispute that the promissory note when Ed died was a legal debt of his. What I'm saying is it does not fall within the term just debt as used by Edward Tietum. Why not? Because when you apply – when you look at the language that's used that follows after just debt, a promissory note does not fall within the general classification of the items that he's using. Now, I would agree with opposing counsel that because he used the word including, that does not mean that this listing is exhaustive. As this Court has made clear that it means it's illustrative, I believe that amplifies our argument rather than diminishing it. It amplifies it because, again, the items that are listed do not relate to a promissory note. I would just like to get to what excludes this particular debt from the body of just debts that this decedent has. What's the – what's the excluding factor? I mean, it's a debt that he owed, so – and I assume just debts means it's a legitimate debt and it's his. So what excludes this particular debt from that body of debts? Because this debt was – it's a $865,000 – it exceeds $865,000 at the time of his debt – at the time of Edward's death. Is there a money – a monetary limitation on what can be a just debt? No, there is not, Your Honor. But what I'm speaking to is the items that Edward has classified or attempted to define within Article 10 of the trust, and it does not meet the classification of items – it does not meet the illustration that is illuminated by Edward E. Thielen within Article 10 of those items that are just debts payable from the trust estate. That's applicable when this court applies the canon of extrusion generis. In addition to exclusio ad unius exclusio alturis, when a person lists one specific thing, he doesn't mean another. If he knew that he wanted trust estate to be used to pay off his promissory note, he would have specifically stated that, Your Honor. He would have said that either in Article 10 or in Article 4. He just simply did not do that, Your Honors. When also looking to Section 20-19, I see my time is running. The Section 20-19, as correctly noted by the appellate court and the Piatt County Circuit Court, applies in order to effectuate the intent of Edward E. Thielen. Now, the will is not in the record, but what is in the record is the circuit court's decision where they took judicial notice of the will of Ed Thielen. And they noted that there was no manifestation of intent by Ed within the will for his estate or for the trust to be responsible for the promissory note. In addition, within the will, he directed that the payments related to his just debts be paid from the trust as provided under Article 10. So what I'm stating is that, as correctly noted by the appellate court, Edward E. Thielen would have known to either draft a codicil to his will or an amendment to the trust in order to specifically state that this trust estate should be used to pay off the promissory note. It's important to note also the context of where – what the assets in this trust are. These are three parcels of farmland in St. Clair County, and the farm income is also deposited as trust assets. And it's to be requested to the two beneficiaries of the estate or the trust, Kevin and Brent Thielen. Why would Ed Thielen have drafted a trust in 2014 titled Three Properties in the Trust for farm income to be generated from it, maintain farming, all for that trust property to be liquidated in order to pay off a promissory note that is attached to property transferred by right of joint tenancy? Counsel, would you bring your argument to a conclusion? Yes, Your Honor. I would ask that the court affirm the decision of the appellate court and the Pia County Circuit Court. Thank you very much. Thank you, Counsel. Senator Buttle. Respondents want to make this case about anything but Section 2019. But in the Circuit Court, that is the argument that they chose. This case is about Section 2019 and its application to trust administration and to assets in an intervivals trust. Now, just to quickly talk about some of these arguments that have been forfeited and just to show that the real reason here is not that they believe that the trust is ambiguous. It's because they don't want this debt to be paid. Because I'll remind you, there was a second debt that also was known at the time that the position for aid and direction was made. That was a debt on a tractor. That debt also isn't listed in Article 10. But they didn't appeal that, so shame on them. Well, that's correct. My point is they've never opposed it because Article 10 is not ambiguous. Article 10 says pay all of my just debts. They don't argue for the tractor debt because they don't care about it. But the principle is that Article 10 is not ambiguous, and they understand that with respect to the tractor debt. They don't like it with respect to the promissory note, but that is not a legal basis to restrict it. But the main point of this case remains that the lower courts have applied a section of the Probate Act to trust administration. They have read in a section of the Probate Act, Section 2019, into the administration of trusts. The only way you can do that is to conclude that the language real or personal estate of the decedent is ambiguous and includes assets in an intervival's trust. That would open the entire Probate Act to trust administration because that term is used repeatedly throughout. That is a dangerous precedent to set. And we ask this court to avoid that, to reverse the appellate court, and to rule the way that we had asked. Thank you. Thank you, counsel. Case number 132453, Tiedemann v. Tiedemann, is taken under advisement as agenda number 10. The court thanks the attorneys for their arguments. Mr. Marshall, the Supreme Court stands adjourned. Thank you.